# ROBERT S. GREEN

## *vs.*

## THE PENNSYLVANIA RAILROAD COMPANY.

### *Railroad Right of Way—Abandonment.*

That a railroad company, after acquiring by condemnation the easement of a right of way sixty feet wide, with the privilege of placing the slope of its embankment or excavation outside of such sixty feet, subsequently extends a side track into the outside space condemned and at first utilized for its slope, does not manifest an intention to abandon the space occupied by the side track.                                   p. 131

The use by a railroad company of land condemned by it, if not wholly inconsistent with the authorized corporate purpose for which the land was condemned, affords no basis for an inference of abandonment, an essential element of which is intention.                                   pp. 131, 132

To recover in ejectment plaintiff must prove that it is invested with title and right of possession as to the land described in the declaration.                                   p. 132

*Decided April 5th, 1922.*

Appeal from the Superior Court of Baltimore City (GORTER, C. J.).

Action by Robert S. Green, to the use of Robert S. Green, Incorporated, against the Pennsylvania Railroad Company, and the Philadelphia, Baltimore and Washington Railroad Company. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Forrest Bramble,* with whom were *William B. Levy* and *Randolph Barton, Jr.,* on the brief, for the appellant.

*Ralph Robinson,* for the appellee.

URNER, J., delivered the opinion of the Court.

The purpose of this action of ejectment is to dispossess the defendant railroad companies from a small portion of the ground acquired by condemnation, for the construction of their railroad, from the plaintiff's predecessor in the ownership of the land of which the condemned area originally formed a part. The occasion of the suit is the maintenance by the defendants, since the year 1912, of a side track extending a few feet into the space formerly occupied by the slope of an excavation made in the grading of the railroad. It is contended by the plaintiff that the ground forming and supporting the slope was acquired solely for the proper grading and protection of the defendants' right of way, and cannot rightfully be used for track purposes. The use of ground, on which a part of the slope previously stood, for the construction of the siding referred to, is said to be such a misuser as to constitute an abandonment to that extent of the easement condemned, and to entitle the plaintiff to recover possession of the land so used by a suit in ejectment. The appeal is from a judgment on a directed verdict for the defendants.

By the inquisition in the condemnation proceedings, from which the nature and extent of the contested interest of the defendants must be ascertained, the land owner was awarded damages for the "use and occupation" of a parcel of land described by metes and bounds and as containing thirty-nine one-hundredths of an acre, which includes the ground in controversy, "for the construction of a railroad" by the condemning corporation, to whose rights the defendants have succeeded. The land thus condemned was further described in the inquisition as being "at every point thirty-three feet distant from the center line of said railroad as now located and

in addition as much more land as is occupied by the slope of any embankment or excavation extending on either side beyond said width of sixty-six feet, said slope not to exceed one foot and one-half horizontal for each foot vertical in the case of excavations and one foot and one-half horizontal for each foot vertical in the case of embankments." The plat annexed to the inquisition, and made a part of it by express reference, shows that the area condemned has a width of forty-four feet from the center line of the railroad right of way. This width includes an allowance of eleven feet for the slope of the cut at the point in dispute. The earth forming the slope has been removed for a space about six feet wide next to the railroad, and the siding in question is on a part of the ground thus leveled. The portion of the slope left in position is supported by a "crib work" built of old cross-ties.

It is only at and near the end of the strip of condemned land described in the inquisition that the siding is laid upon a part of the ground formerly occupied by the slope. In diverging from the main system of tracks, the siding passes over a section of the orginal slope area about fifteen feet in length and having a maximum width of about three feet. Between the siding and the face of the slope now buttressed with cross-ties, there is a level and vacant space three and a half feet wide. From the face of the existing slope to the outer limit of the land condemned the distance is four and a half feet.

If this suit were to succeed, it would result in the ejection of the defendants from the small piece of ground we have indicated, while their easement in the land by which it is completely surrounded, within the limits of the condemnation, would be left undisturbed. It is not suggested that the theory of abandonment by misuser, upon which the suit is sought to be maintained, could apply to any part of the ground except that upon which the siding has been constructed. The substitution of the crib-work for a portion of the slope is, of course, entirely consistent with the purposes of the condemnation. If the slope had been wholly replaced

by a retaining wall, the defendants could not be said to have
thereby abandoned the intervening ground on which the slope
had rested.  The only fact to which the plaintiff refers in sup-
port of the charge of misuser is the maintenance of a siding
on a part of the land from which the slope was removed, and
the only extent to which abandonment is said to have resulted
is measured by the space on which the siding is actually
located.

The argument in support of the plaintiff's right of action
does not rest simply upon the proposition that the user com-
plained of imposes a servitude upon the land *in addition* to
that for which compensation was awarded.  If it were con-
ceded that the use for a siding of a part of the ground pre-
viously occupied by the slope was not contemplated by the
inquisition, and was an additional burden to the land, as to
which relief by injunction or the recovery of damages might
be obtainable, it would not necessarily follow that an action
of ejectment could be maintained for the purpose of dispos-
sessing the defendants of the land thus used.  This is ad-
mitted by counsel for the plaintiff, but it is contended that
the use for which the ground was condemned has been wholly
discontinued, and that the present use has been substituted
for, and not merely added to, the one authorized by the con-
demnation proceedings.  The effect of such a substitution is
said to be a conclusive implication of abandonment, entitling
the plaintiff to recover possession of the area in litigation.

As an illustration of misuser for which ejectment is main-
tainable, the case of *Weyler* v. *Gibson,* 110 Md. 636, is cited.
In that case it was held that the action was available to the
owner of the fee in the bed of a street against a public official
by whom it was appropriated for the erection of a building.
The conditions there presented were very different from those
existing in the case at bar.  The subject of this controversy
is a particular use, which is compatible with the general pur-
pose of the condemnation under which the railroad easement
was acquired.  Whether such use imposes an additional servi-

tude on the land is not the question to be now determined. If the use is not wholly inconsistent with the authorized corporate purpose for which the land was condemned, it affords no basis upon which the theory of abandonment can be sustained. Intention is an essential element of abandonment. *Pub. Service Com.* v. *Phila. B. & W. R. Co.,* 122 Md. 443; *Canton Co.* v. *Balto. & Ohio R. Co.,* 99 Md. 219. The maintenance by the defendants of a siding on a part of the additional land required and taken for the grading of the railroad certainly does not manifest an intention to abandon the ground so utilized. If the siding had not been constructed, the defendants would still be entitled to the space originally under the slope for the protection of their roadbed. The removal of a portion of the slope and the erection of the cribwork could not be held to have destroyed any of the defendants' possessory rights, and it is clear that such an effect is not attributable to the use of a part of the ground for the purpose of a siding.

In order to recover in this action it was necessary for the plaintiff corporation to prove that it is invested with title and right of possession as to the land described in the declaration. *Joseph* v. *Bonaparte,* 118 Md. 591; *Brooke* v. *Gregg,* 89 Md. 234; Code, art. 75, sec. 71. This could not be accomplished without proof that the defendants had become divested of the easement in the land sued for, which the condemnation proceedings definitely and validly conferred. The undisputed facts of the case do not warrant such a conclusion.

The instruction which required a verdict for the defendants was correct. There were several other rulings to which exceptions were taken, but they are conceded to be immaterial.

*Judgment affirmed, with costs.*